JERRY CONLEY *v.* STATE OF INDIANA.

[No. 671S183. Filed July 13, 1972.]

*Mrs. Harriette Bailey Conn,* Public Defender of Indiana, *David J. Colman,* Deputy Public Defender, of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This case is before the court on Defendant-Appellant Jerry Conley's appeal from the denial of his petition under Rule PC. 1 in which he requested that he be allowed to withdraw a previously entered plea of guilty to the offense of assault and battery with intent to kill. IC 1971, 35-13-2-1; *Burns' Ind. Ann. Stat.* § 10-401 (a) (1971 Supp.).

It is appellant's contention that according to the official record, the trial judge failed to satisfy his duty by advising the defendant of his constitutional rights, the nature of the

charge, and the consequences of the plea of guilty prior to its acceptance.

The record in this case reveals that on March 17, 1969, appellant appeared in the Circuit Court of Dubois County, where the Honorable Howard King, Judge, read the charging affidavits and the statutes allegedly violated. Judge King also advised the defendant of his right to counsel. Since it is material to our consideration of this case, these proceedings are set out below:

> "*Judge King:* There are several affidavits here, I will read them to you and advise you what you are charged with. (here the Court reads the affidavit—carrying a pistol without a license.). The statute of this state for that offense is as follows: (here the Court reads the statute to the defendant).
>
> This one charges you with resisting arrest; (here the Court reads the affidavit to the defendant). The statute of this state for that offense is as follows: (here the Court reads the statute).
>
> And this one—Assault & Battery with intent to commit a felony. (here the Court reads the affidavit to the defendant). The statute of this State for that offense is as follows: (here the court reads the statute to the deft [sic])."

The record shows that the affidavit reads as follows:

> "Comes now Larry L. Eck a competent and reputable person of said County, who, being duly sworn upon his oath says that on the 14th day of March, 1969, at Dubois County, State of Indiana, the said JERRY CONLEY did then and there unlawfully and feloniously attempt to commit a violent injury upon the person of this Affiant, he, the said JERRY CONLEY, then and there having the present ability to commit said injury by then and there unlawfully, feloniously, purposely and with pre-meditated malice, shooting at this Affiant with a certain 38 caliber pistol then and there loaded with gun powder and lead, which the said JERRY CONLEY then and there had and held in his hands with the intent then and there and thereby him, this Affiant, unlawfully, feloniously, purposely and with pre-meditated malice, to kill and murder, contrary to

the form of the Statutes in such cases made and provided and against the peace and dignity of the State of Indiana."

Although the Judge referred to the charge as "Assault & Battery with intent to commit a felony," which provides for a sentence of 1-10 years [IC 1971, 34-1-54-3, *Burns' Ind. Ann. Stat.* § 10-401 (1971 Supp.)], the record shows the actual charge was assault and battery with intent to kill which carries a penalty of 2-14 years. IC 1971, 35-13-2-1, *Burns' Ind. Ann. Stat.* § 10-401 (a) (1971 Supp.). We find no error in the Judge's statement of the name of the charge since the charge itself, and the statute for "that offense" was read verbatim to the defendant.

The Court thereafter continued:

*"By the Court:* Now before you make any statement or enter any plea under our Constitution, the Constitution of this State and the United States, you have a right to consult with an attorney. Do you have an attorney?

A. No, sir.

Q. Have you consulted with an attorney?

A. No, sir.

Q. Do you have any money?

A. No, sir."

\* \* \*

On April 3, 1969, appellant appeared in the Circuit Court with his appointed attorney and entered pleas of "Not Guilty" to the charges alleged in the affidavits and asked for a jury trial.

On May 5, 1969, defendant-appellant again appeared in Court with his attorney for the purpose of withdrawing his plea of not guilty to the charges alleged in the affidavit:

\* \* \*

Mr. Howard Lytton, attorney for the defendant advised the Court that the defendant wished to change his plea of not guilty to a plea of guilty, to the charges alleged in the affidavit.

*"Judge King:* Mr. Conley, stand up. Do you wish to change your plea in this case?

*Mr. Conley:* Yes, I want to plead guilty at this time.

*Judge King:* Do you fully understand the charges alleged in the affidavit?

*Mr. Conley:* Yes.

Judge King now reads to the defendant a portion of the affidavit including the following: [here the material part of the affidavit, *supra*, is set out in the record.]

*Judge King:* Now what is your plea Mr. Conley to those charges as alleged in the affidavit?

*Mr. Conley:* Guilty."

Conley was sentenced to "the Indiana State Prison for a period of not less than two (2) nor more than fourteen (14) years." Conley contends the Court committed error by not inquiring into the voluntariness of his guilty plea. Although Conley was present at the Rule PC. 1 hearing, he did not take the stand to offer testimony relating to the voluntariness of his plea or his understanding of its consequences. At that hearing the trial judge mentioned the possibility of securing testimony from the appellant's trial counsel on the subject of Conley's understanding of his situation when the guilty plea was entered. This offer was declined:

"*Judge King:* Would there be any difference in your argument if the attorney who represented him would testify in this cause?

*Mr. Colman* [for the Public Defender]: Absolutely not your Honor. As I pointed out, the burden of inquiry falls upon the trial court itself. I'm sure there is substantial federal case law, although I do not have them at my finger tips, even if in fact the defendant had been advised by his attorney of all of his constitutional rights, the guilty plea hearing under federal law would be inadequate."

Appellant is in error in asserting that the burden rests with the trial court. Rule PC. 1 (5) states: "The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence." In determining the voluntariness of the plea, it is proper for the trial court to consider appellant's failure to avail himself of the attorney's

testimony. In the setting of this case, we feel the following statement from *Schmittler* v. *State* (1950), 228 Ind. 450, 93 N. E. 2d 184, is most appropriate.

"It will be noted that appellant, upon whom rested the burden of proof, did not produce his attorney's affidavit or testimony. Here the appellant had it peculiarly within his power to produce this witness whose testimony could or would explain the entire transaction. The fact that the appellant did not produce . . . the testimony of this witness raises the presumption that this evidence or testimony if produced would have been unfavorable or prejudicial to him. From this failure the court may have drawn the inference that the attorney would not have corroborated the appellant. . . ." 228 Ind. 467, 93 N. E. 2d 191.

However, the record does contain an affidavit of petitioner's attorney at the time of his plea of guilty. This was filed in opposition to the motion to correct errors and was in the record prior to the hearing on that motion. It reads, in pertinent part, as follows:

". . . I advised Mr. Conley of his constitutional rights and also the penalties for each charge. On numerous occasions he was advised of his right of a trial by jury and also the penalty he could receive by entering a plea of guilty to the charge of assault with intent and through his own decision entered a plea of guilty to the charge."

We find that this affidavit was properly in the record and before the trial court for consideration under Rule PC. 1 (5).

Indiana case law has long recognized the importance of a full inquiry into the voluntariness of guilty pleas obtained from defendants who are without the services of counsel:

"A court should accept pleas of guilty from defendants charged with serious crime who are unrepresented by counsel, when they are manifestly young and inexperienced or obviously lacking in intelligence or knowledge of the spoken language, with caution and only after reasonable inquiry into the facts to discover whether

a plea of guilty is entered freely and understandingly."
*Dobosky* v. *State* (1915), 183 Ind. 488, 491, 109 N. E. 742, 743.

Further, our trial judges have an affirmative duty to advise unrepresented defendants of their constitutional rights and the consequences of a decision to plead guilty. See ▪ *Thacker* v. *State* (1970), 254 Ind. 665, 262 N. E. 2d 189; *Gates* v. *State* (1962), 243 Ind. 325, 183 N. E. 2d 601; *Dearing* v. *State* (1951), 229 Ind. 131, 95 N. E. 2d 832; *Rhodes* v. *State* (1927), 199 Ind. 183, 194, 156 N. E. 389; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N. E. 220; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773. If the trial judge fails to discharge this obligation, the defendant will be entitled to either withdraw his plea or present the issue of its voluntariness in a post conviction proceeding. *Id.*

In *Campbell* v. *State* (1951), 229 Ind. 198, 96 N. E. 2d 876, this court stressed the need for the establishment of a record which would indicate that a defendant, before ▪ the court without an attorney, had been properly advised of his rights and the consequences of a decision to confess guilt:

> "One of the reasons for the adoption of Rule 1-11 [now Rule CR. 10] . . . by this court is to provide an unimpeachable record showing the extent of the inquiry into the facts, circumstances and conditions made by the trial court to ascertain at the time whether the offered plea of guilty is made freely and understandingly. Without such record the trial court is, by its own volition, shorn of the procedural facts that might protect its judgment from attack." 229 Ind. 202, 96 N. E. 2d 877.

See also: *Thacker* v. *State* (1970), 254 Ind. 665, 262 N. E. 2d 189.

While these cases establish essential requirements for dealing with defendants who are unrepresented, we are aware

of no Indiana decision which would extend such standards to situations in which the defendant had complete representation of trial counsel, and we know of no rule or statute to the contrary.

Although Rule CR. 10 imposes upon the Judge the obligation of making a record when pleas are received, it does not fix any standard as to the content of the court's questions or statements to the defendant, as does Fed. Rule Crim. Proc. 11. We feel, however, that the common law, as expressed in the cases of this state, is in substantial conformity with the federal rule. This rule provides:

> "A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with the understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

It would be wise and prudent for a trial judge in Indiana to follow the federal rule by inquiring as to the understanding and voluntariness of a guilty plea entered by a criminal defendant at the time the plea is tendered. We suggest also that even when represented by counsel, a cautious and discreet judge would make the same inquiry. We say this although the court does not have the burden of representing the defendant if he has counsel. The court is not the defendant's attorney, and we have held that every defendant is entitled to an attorney, even at taxpayer's expense if a pauper. The purpose of such an attorney is to advise the defendant. To assume that an attorney so appointed for a defendant acted incompetently, without evidence to that effect, would be a contradiction

in itself. We must assume normally, until the contrary is alleged and proved, that counsel have performed their duty and have properly advised their client, the defendant. Then, in the event an issue is made of the effectiveness of such counsel, (as is not done here) any defect or weakness in the taking of the plea of guilty would be remedied by the court's inquiry in conformity with the standards of the federal rule. Of course, when the defendant is not present with counsel, the duty of inquiry on the part of the trial judge becomes obligatory.

"[T]here is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption." *Issac* v. *State* (1971), 257 Ind. 319, 274 N. E. 2d 231, 237. *See also, Shuemak* v. *State* (1970), 254 Ind. 117, 258 N. E. 2d 158, 160; *Schmittler* v. *State* (1950), 228 Ind. 450, 467, 93 N. E. 2d 184.

It is the duty of counsel, whether appointed or retained, to afford his client full and adequate representation and consultation. e.g. *Brimhall* v. *State* (1972), 258 Ind. 153, 279 N. E. 2d 557, 561-62, 565-66. e.g. *Sparks* v. *State* (1964), 245 Ind. 245, 250-51, 195 N. E. 2d 469, *reh granted* 196 N. E. 2d 748; *Wilson* v. *State* (1943), 222 Ind. 63, 79-81, 51 N. E. 2d 848. *Sanchez* v. *State* (1927), 199 Ind. 235, 247, 157 N. E. 1; *Rhodes* v. *State* (1927), 199 Ind. 183, 193, 156 N. E. 389. It follows that in a criminal case, the defense attorney bears the affirmative obligation of informing the defendant of his constitutional rights, the existence of defenses, and the consequences of his plea. Without an allegation and showing of ineffective counsel in this case, we must conclude that Conley's attorney provided full and adequate assistance, which would include consultation regarding the defendant's constitutional rights and the gravity of his offense.

We must conclude that the trial court was correct in finding against the appellant and that he failed to sustain his burden

of proof that he was misinformed, that he was deceived ▮ or that he did not understand the plea and its consequences. The appellant did not take the stand to deny the record or support the contentions made in the briefs and at the Rule PC. 1 hearing. The rule under which this proceeding was brought places upon the petitioner the burden of making out his case by a preponderance of the evidence. Rule PC. 1 (5). The creation of a mere ambiguity or uncertainty in the evidence cannot be characterized as sustaining the burden of proof by a preponderance thereof. On the contrary, there is no allegation of inadequacy on the part of his attorney and there is no proof in the record of such a condition.[1]

The judgment of the trial court is affirmed.

Givan, Hunter, JJ., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

## DISSENTING OPINION

DeBruler, J.—I would hold that this record clearly shows the trial court failed to satisfy his constitutionally required duty to determine that appellant was entering his guilty plea knowingly and voluntarily.

Nothing in the criminal process is more momentous than the decision by an accused to plead guilty to a criminal charge and, therefore, it is universally agreed that before accepting a guilty plea the trial court has the critically important duty of determining that the accused is entering the plea volun-

---

1. Appellant's argument that the result in this case is governed by *Boykin* v. *Alabama* (Decided June 2, 1969), 395 U. S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, is not well taken. For the reasons advanced in *Halliday* v. *United States* (1969), 394 U. S. 831, 89 S. Ct. 1498, 23 L. Ed. 2d 16 [denying retroactive effect to *McCarthy* v. *U. S.* (1969), 394 U. S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418], we feel secure in stating that the United States Supreme Court would not give *Boykin* retroactive application. Other jurisdictions have reached the same conclusion: *See Dominquez* v. *Henderson* (5th Cir. 1971), 447 F. 2d 207; *Meller* v. *Missouri* (8th Cir. 1970), 431 F. 2d 120, *cert. den.* 400 U. S. 996, 27 L. Ed. 2d 445; 91 S. Ct. 469; *Perry* v. *Crouse* (10th Cir. 1970), 429 F. 2d 1083; *Moss* v. *Craven* (9th Cir. 1970), 427 F. 2d 139; *U. S. Ex rel. Fear* v. *Pennsylvania* (3d Cir. 1970), 423 F. 2d 55; *U. S. Ex rel. Hughes* v. *Rundle* (3d Cir. 1969) 419 F. 2d 116; *Commonwealth* v. *Godfrey* (1969), 434 Pa. 532, 254 A. 2d 923.

tarily and knowingly. *Brimhall* v. *State* (1972), 258 Ind. 153, 279 N. E. 2d 557; *Dube* v. *State* (1971), 257 Ind. 398, 275 N. E. 2d 7; *Thacker* v. *State* (1970), 254 Ind. 665, 262 N. E. 2d 189; *Gates* v. *State* (1962), 243 Ind. 325, 183 N. E. 2d 601; *Campbell* v. *State* (1951), 229 Ind. 198, 96 N. E. 2d 876; *Harshman* v. *State* (1953), 232 Ind. 618, 115 N. E. 2d 501; *Mislik* v. *State* (1915), 184 Ind. 72, 110 N. E. 551; *Brady* v. *U.S.* (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *McCarthy* v. *U.S.* (1969), 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418; Fed. R. Cr. P. 11. This duty is completely independent of the duty resting on the defendant's attorney to advise his client of the latter's constitutional rights. Even if it were appropriate to presume the attorney fulfilled his duty, that is irrelevant to the question of whether the trial court fulfilled his. If the record shows the trial court failed in his duty, then the plea should be vacated without regard to what the attorney did or did not do.

The method of fulfilling that duty is simple and is dictated by the dual nature of a guilty plea. In the first place it is an admission that the defendant committed the acts alleged and is guilty of the offense charged. In the second place the plea constitutes a waiver of several federal and state constitutional rights including the privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. To perform his duty then, the trial court must make inquiries of the defendant and his attorney to assure himself that: (1) the admission and waiver are not the result of coercion, threats, promises or any improper influences by the State or the defendant's attorney. (2) the defendant understands the nature of the charge against him, *i.e.*, understands the relation between the alleged facts he is admitting, the affidavit and the statute under which he is being prosecuted. (3) the defendant understands the consequences of the plea, including the range of possible sentences. (4) the defendant understands specifically each of his constitutional rights and the significance of waiving them. "Waivers

of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."

The above rules are required by the following cases: *Riley* v. *State* (1972), 258 Ind. 303, 280 N. E. 2d 815; *Brimhall* v. *State, supra; Dube* v. *State, supra; Thacker* v. *State, supra; Wright* v. *State* (1970), 255 Ind. 292, 264 N. E. 2d 67; *Harshman* v. *State, supra; Rhoades* v. *State* (1926), 199 Ind. 183, 156 N. E. 389; *Campbell* v. *State, supra; Brady* v. *U.S., supra; McCarthy* v. *U.S., supra.*

To insure that the trial court satisfies his duty, Rule CR. 10 (formerly Supreme Court Rule 1-11) requires that the colloquy between the trial court and the defendant at the arrangement be transcribed verbatim and preserved as a record of that proceeding. The complete record of the colloquy in this case is before us and there is no issue of who had the burden of proof. All we have to do is read the record and see if the trial court fulfilled his constitutional duty.

The advantage of this procedure of merely looking to the Rule CR. 10 transcript to determine whether the trial court performed his duty are obvious. First is the saving in judicial time at both the appellate and trial level. Challenges in PC. 1 petitions based on the defendant's not being advised of his constitutional rights and nature of the charge can be disposed of summarily. It is either in the transcript or it is not. As we said in *Campbell* v. *State, supra:*

> "One of the reasons for the adoption of Rule 1-11, *supra,* by this court is to provide an unimpeachable record showing the extent of the inquiry into the facts, circumstances and conditions made by the trial court to ascertain at the time whether the offered plea of guilty is made freely and understandingly. Without such record the trial court is, by its own volition, shorn of the procedural facts that might protect its judgment from attack." 229 Ind. at 202.

In discussing a similar federal rule, the United States Supreme Court said:

"To the extent that the district judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary. Both of these goals are undermined in proportion to the degree the district judge resorts to 'assumptions' not based upon recorded responses to his inquiries." 394 U.S. at 467.

Second, it keeps the court's attention focused on the real issue of whether the defendant entered his plea knowingly and voluntarily and prevents the court from getting bogged down with collateral and very difficult issues of effectiveness of defendant's counsel. Attacks on an attorney's effectiveness in representing a client present problems that dwarf the guilty plea issue. Great pressure is on the attorney to defend himself and if his testimony conflicts with his former clients inevitably the trial court will feel great pressure to resolve the conflict in favor of the attorney. In addition the level of effectiveness of the counsel need not be very high to defeat a challenge based on effective representation. See *Johnson* v. *State* (1968), 251 Ind. 17, 238 N. E. 2d 651. Therefore the prospects of a defendant ever winning such a contest are slight indeed. Why the majority would want to convert a relatively simple litigation like vacating a guilty plea into an attack by the attorney representing the petitioner on the former attorney's effectiveness as counsel, is beyond me.

The record in this case shows the trial court failed to clearly and unambiguously advise appellant of the nature of the charge against him and the consequences of the guilty plea. On March 17, 1969, appellant without counsel appeared before the court to answer several charges. The trial court explained the charge involved in this appeal as follows:

"And this one . . . Assault & Battery with intent to commit a felony. (here the Court reads the affidavit to the defendant) The statute of this State for that offense is as follows: (here the Court reads the statute to the deft)"

Assault and battery with intent to commit a felony defined in I.C. 1971, 35-1-54-3, being Burns § 10-401, carries a penalty of one to ten years in prison. However, the affidavit read to appellant and upon which he was later sentenced clearly charged assault with intent to kill, I.C. 1971, 35-13-2-1, being Burns § 10-401 (a), carrying a penalty of two to fourteen years in prison. Assault with intent to kill is a completely distinct offense from assault and battery with intent to commit a felony. The majority opinion insists appellant was not misinformed as to the charge and possible penalty because the trial court read the affidavit to him and the statute. The question is, which statute? The record does not reveal which statute the trial court read and therefore the majority cannot possibly know whether appellant was misinformed or not. The record shows the trial court never read the charge on the statute again to appellant at the later proceedings. It is simply impossible to say from this record that the trial court fulfilled his duty of determining that the appellant understood the nature of the charges and the consequences of pleading guilty to them.

Neither does the record show the trial court adequately performed his duty of determining that appellant understood his constitutional rights. At the March 17th proceeding the trial court advised appellant he had a right to consult with an attorney and asked if appellant had done so. Appellant answered no. The trial court did not mention any other constitutional rights. Appellant did not plead guilty at that time and on May 5, 1969, appellant, with appointed counsel, entered a plea of guilty to the above affidavit. The record made at that time pursuant to CR. 10 shows the following:

*"JUDGE KING:* Mr. Conley, stand up. Do you want to change your plea in this case?

*MR. CONLEY:* Yes, I want to plead guilty at this time.

*JUDGE KING:* Do you fully understand the charges alleged in the affidavit?

*MR. CONLEY:* Yes."

The trial court then read the affidavit to appellant and said:

*"JUDGE KING:* Now what is your plea Mr. Conley to those charges as alleged in the affidavit?
*MR. CONLEY:* Guilty."

The CR. 10 record also includes the prosecuting witness' testimony about the commission of the offense, but the above is the complete record of the trial court colloquy with appellant concerning his plea.

This record conclusively shows that the trial court failed to inquire into appellant's understanding of his constitutional rights prior to accepting appellant's plea.

Prentice, J., concurs.

NOTE.—Reported in 284 N. E. 2d 803.